## NATIONAL LABOR RELATIONS BOARD v. LANDIS TOOL CO.

### No. 10563.

United States Court of Appeals,
Third Circuit.

Argued Dec. 4, 1951.

Decided Jan. 3, 1952.

Willis S. Ryza, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel and Frederick U. Reel, National Labor Relations Board, all of Washington, D. C., on the Brief), for petitioner.

Lacy I. Rice, Martinsburg, W. Va., and Earle K. Shawe, Baltimore, Md. (Rice, Hannis & Rodgers, Martinsburg, W. Va., counsel on the Brief), for respondent.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The National Labor Relations Board on April 18, 1950 found that Landis Tool Company, the respondent, had refused to engage in good faith in collective bargaining with the Pattern Makers League of North America, the certified bargaining representative of an appropriate unit of its employees in violation of. the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and entered an order requiring the respondent to cease from such refusal. 89 N.L.R.B. 503. On September 11, 1951 the Board filed the present petition in this court for the enforcement of the order. The respondent strongly urges that the Board's crucial findings are not supported by substantial evidence on the record considered as a whole. Our consideration of the case compels the conclusion that the respondent is right and that the Board's order must be set aside.

The Board found "that by refusing to submit a counterproposal, by refusing to recognize the separate identity of the patternmakers as an appropriate unit for the purpose of negotiating a wage increase, by unilaterally granting a wage increase on June 7, 1948, and by dilatory tactics in delaying meeting with the Union, the Respondent evidenced an intention to avoid its duty to bargain in good faith." Each of the four subsidiary findings upon which the Board thus relied must be examined in the light of the previous relations between the respondent and the League as shown by the record. When so examined they lose all substance.

At an election held on March 12, 1946, the Pattern Makers League of North America was chosen as their bargaining representative by the patternmakers and patternmaker apprentices employed by respondent. On the same day approximately 900 production and maintenance employees of the respondent chose the International Union of United Automobile, Aircraft and Agricultural Implement Workers of America as their bargaining representative. Thereafter the respondent commenced negotiations with both unions, its first bargaining conference with the Pattern Makers League being held on May 1, 1946, at which time the League presented a proposed contract and demanded a substantial increase in wages. The next conference was on May 23, 1946 at which time the respondent presented a written counterproposal. Subsequent conferences were held on June 25, 1946, April 10, 1947, May 15, 1947 and February 27, 1948. No other meetings were requested by the League during this period.

At these meetings the League's proposal and the respondent's counterproposal were fully discussed. The respondent informed the League that it was negotiating with the union which represented its 900 production and maintenance employees and that the League's demands for large wage increases, union security, plantwide seniority and other changes must be considered in relation to the entire plant picture. It was recognized by the League's representatives that there was merit in this position and for this reason they did not press the negotiations any more vigorously during 1946 and 1947. There was evidence that the League's representatives sought and obtained from the respondent an oral under-

standing that if, during their negotiations, the respondent granted a general plant-wide wage increase, such increase would be put into effect for the patternmakers as a partial payment of and without prejudice to their wage demands. The Board thought that the record failed to support the existence of such an agreement but our review of the whole record satisfies us beyond doubt that such an agreement was made. The great weight of the evidence establishes the fact and the subsequent conduct of both parties confirms it. Thus a general increase in wages in the plant was put into effect by the respondent on November 4, 1946 and again on June 23, 1947. In each case the respondent informed a representative of the League of its intention to apply the increase to the patternmakers as well as to its other employees and the representative acquiesced.

The Board found no unfair labor practice on the part of the respondent until May 4, 1948, when the next meeting took place. At this meeting the parties discussed a short memorandum contract which the League's representative had submitted. Oral proposals and counterproposals were made and discussed as well as a written substitute for the League's proposed discrimination clause. The League's representative asked the respondent to submit a counterproposal but the latter declined to do so until the League had itself submitted a complete new proposal. It was this attitude on the part of the respondent which the Board took as one of the bases for its finding against the respondent. The Board was here clearly in error, however, since it ignored the fact that the respondent at the second meeting on May 23, 1946 had laid on the bargaining table a full written counterproposal to the contract offered by the League at the first conference. Both proposals were before the parties and were discussed at every meeting. The area of agreement obviously lay between them. Since the Act, as amended, does not require the making of a concession [1] the respondent had no legal duty to offer a second counterproposal.

After the adjournment of the bargaining session held on May 4, 1948 respondent's counsel had dinner with the League's representative and informed him that the respondent was considering a general wage increase in its plant of between 5 and 8 cents per hour sometime after May 14, 1948, the date which had been set for their next meeting. Shortly thereafter respondent's counsel asked that the May 14th meeting be postponed, and the representative of the League acquiesced under date of May 12, 1948. On June 7, 1948 the respondent granted the contemplated general wage increase in the amount of 7 cents per hour, the amount being fixed to conform to the wage pattern in the area and to compensate for the increase in the cost of living. The increase was applied to the patternmakers as well as to the other 900 employees of respondent and no specific notice of it was given to the League in advance, other than the dinner conversation to which we have already referred. It is this "unilateral" wage increase which the Board relies upon as another basis for its finding against the respondent.

Here again we are satisfied that the Board's finding is not supported by substantial evidence in the light of the entire record. On the contrary it is perfectly clear that in granting this plantwide wage increase the respondent was merely following the pattern set by the two prior wage increases, which the Board found to be unobjectionable, and was carrying out its understanding with the League that any wage increases which it might grant to its 900 other employees should be applied to the 15 patternmakers as a payment on account of their wage demands. That it was so regarded and that the objection to it came as an afterthought is established by the fact that the League registered no objection to the increase until September 27, 1948, when the parties again met and then did not seriously object but merely stated that its representatives should have been consulted. All three of the wage increases granted by the respondent, added

---

1. National Labor Relations Act, § 8(d), as amended by the Labor Management Rela-tions Act, 1947, § 101, 29 U.S.C.A. § 158 (d).

together, did not equal the wage demands which the League made at the first meeting.

We do not have here the situation where an employer refuses the demand of a union for a wage increase and thereafter unilaterally grants the increase or a greater one to the employees represented by the union without giving the union credit for it. Here the respondent was faced with a practical situation in its plant which the League fully recognized throughout the negotiations. The respondent's principal concern obviously had to be for its 900 production and maintenance employees with regard to which it was negotiating with the United Automobile Workers. Its negotiations with respect to the 15 patternmakers in its plant obviously had to be carried on in the light of the larger problem. During this period, as we all know, the cost of living was rising and the respondent was alert to its responsibility to recognize this fact in its wage scales. We do not think that the respondent's action in giving the patternmakers the benefit of the wage increases which it was willing to give to its other employees can under the circumstances of this case fairly be construed to be an unfair labor practice.[2] On the contrary we think that the whole record demonstrates that these increases were given pursuant to an obligation which the respondent had assumed in the course of its bargaining negotiations with the League.

■ The two remaining bases of the Board for its finding against the respondent require but little discussion. One of these was that the respondent was guilty of dilatory tactics in delaying meeting with the League between May 4 and September 27, 1948. There is simply no basis in the record for such a finding. It is true that there was delay in arranging a meeting subsequent to the one held on May 4, 1948, but this delay was just as much attributable to the League as it was to the respondent. As already stated counsel for the respond-

ent had written to the representative of the League suggesting the postponement until sometime in July of a further meeting which had been scheduled for May 14th. This was agreed to by the League on May 12th. Then in July it appeared that both of the principal officers of the company who were empowered to conduct the negotiations on its behalf were away on other business so that a conference was suggested first for August 10th and then because of a conflicting meeting for August 13th. The League representative wrote that August 13th would not be convenient but suggested no alternative date. Finally after an exchange of correspondence September 27th was agreed upon and a meeting was held on that date. We think that the facts demonstrate that just as much of the delay was attributable to the League as to the respondent and that they do not show any dilatory tactics on the part of respondent.

■■ The fourth and final basis for the Board's order is its finding that the respondent refused to recognize the separate identity of the patternmakers as an appropriate unit for the purpose of negotiating a wage increase. Here again we find no warrant in the record for such a conclusion. It is perfectly true that the respondent insisted that it must consider any wage increase to be granted to the patternmakers in connection with wage increases which might be granted to its 900 other employees. Under the circumstances existing in the plant we have no doubt of the respondent's right to take this position so long as it did not refuse to negotiate with the patternmakers' representative with respect to their wages. The record is replete with evidence that the respondent continuously carried on such negotiations with the League. That these negotiations were carried on in good faith is illustrated by the fact that in connection with the wage increase of June 23, 1947 the respondent

2. Compare National Labor Relations Board v. Crompton-Highland Mills, 1949, 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320, with National Labor Relations Board v. Bradley Washfountain Company, 7 Cir., 1951, 192 F.2d 144; In the Matter of Southern Prison Company, 1943, 46 N.L.R.B. 1268; In the Matter of Exposition Cotton Mills Company, 1948, 76 N.L.R.B. 1289, 1292; In the Matter of W. W. Cross & Company, 1948, 77 N.L.R.B. 1162, 1165–1166.

actually adjusted the wage rates of certain of the patternmakers in order that they might reflect differentials which the League had requested and which the respondent had agreed to put into effect pursuant to that request.

The order of the National Labor Relations Board will be set aside.