**UNITED FOOD AND COMMERCIAL WORKERS LOCAL 204, John Le-Grand, Frank Sullivan, and Leon Person, individually and on behalf of all similarly situated individuals represented by United Food and Commercial Workers Local 204, Plaintiffs,**

v.

**HARRIS–TEETER SUPER MARKETS, INC., Ruddick Corporation, Alan T. Dickson, and Ruddick Corporation Savings and Protection Plan, Defendants.**

No. C–C–88–426–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

March 28, 1989.

Jonathan R. Harkavy, Smith Patterson Follin Curtis James & Harkavy, Greensboro, N.C., Renee Bowser, Washington, D.C., and Michael G. Okun, Smith Patterson Follin Curtis James & Harkavy, Raleigh, N.C., for plaintiffs.

Robert B. Cordle and Irving M. Brenner, Smith Helms Mulliss & Moore, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

### I. PRELIMINARY STATEMENT

THIS MATTER is before the Court on Defendants' Verified Motions to Dismiss and Motion for Sanctions, filed November 14, 1988. On January 24, 1989, a hearing on these motions was conducted, the undersigned presiding. Jonathan R. Harkavy, Esq. and Renee L. Bowser, Esq. appeared at the hearing on Plaintiffs' behalf, and Robert B. Cordle, Esq. and Irving M. Brenner, Esq. appeared on Defendants' behalf. After hearing counsel's arguments, the undersigned took the outstanding motions under advisement. For the reasons that follow, this Court will (1) deny in part and grant in part Defendants' Motions to Dismiss, (2) will dismiss United Food and Commercial Workers Local 204 as a plaintiff for lack of standing, and (3) will deny Defendants' Motion for Sanctions.

### II. NATURE OF THE CASE AND QUESTIONS PRESENTED

The parties disagree on how this Court should view the fundamental nature of the present case. Plaintiffs, who are a labor union and three individual unionized warehouse employees of Defendants, claim that the present action arises under the Employee Retirement Security Act of 1974, as amended, 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1988) ("ERISA"). Plaintiffs assert that the present case arises under ERISA because the individual Plaintiffs are seeking to be recognized as participants in an employee benefits plan that Defendants have set up, and currently administer, for their employees. Defendants, on the other hand, claim that this action should be perceived as arising solely under the National Labor Relations Act ("NLRA"), 29 U.S.C.A. §§ 151–168 (West 1973 & Supp.1988), and should be seen as within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). Defendants assert that this is an NLRA case because the individual Plaintiffs are represented by a certified collective bargaining unit to which has been offered, during negotiations on a proposed collective bargaining agreement "package," unionized employee participation in the benefits plan. The union rejected the proposed collective bargaining agreement package and filed charges with the NLRB claiming, inter alia, that Defendant Harris–Teeter Super Market, Inc. ("Harris–Teeter") was engaging in unfair labor practices by refusing to allow the unionized employees to participate in the plan in the absence of a collective bargaining agreement. The NLRB refused to act on one charge and the union voluntarily withdrew the other charge.

Defendants have asked this Court to dismiss Plaintiffs' Complaint on the ground that this Court lacks subject matter jurisdiction over Plaintiffs' claims. Defendants assert that the NLRA effectively preempts this sort of lawsuit because the NLRB, the administrative agency charged with enforcement of the NLRA, is the only appropriate body that can, and should, decide the issues raised in Plaintiffs' Complaint. Plaintiffs, on the other hand, contend that they are merely seeking to enforce their independent federal remedies under ERISA and are not seeking any relief related to collective bargaining or unfair labor practices or the NLRA. Thus, this Court must decide whether the federal district courts have subject matter jurisdiction under the applicable portion of ERISA, 29 U.S.C. § 1132, to entertain suits brought by individual unionized employees—not covered by a collective bargaining agreement—who

have been excluded, because they are unionized employees, from participation in an employee benefits plan covered by ERISA and who are seeking to enforce their rights, if any, under the terms of the plan or to clarify their future rights, if any, under the terms of the plan.

Defendants have also asserted, assuming that this Court has subject matter jurisdiction under ERISA, that Plaintiffs' Complaint should be dismissed because it was allegedly filed beyond the time prescribed by the appropriate statute of limitations. Finally, Defendants seek to have the union dismissed as a plaintiff for lack of standing. Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Defendants are seeking sanctions against Plaintiffs for filing a lawsuit that is allegedly without foundation in law or fact.

### III. STATEMENT OF FACTS

Plaintiffs John LeGrand ("LeGrand"), Frank Sullivan ("Sullivan"), and Leon Person ("Person") are Charlotte warehouse employees of Harris–Teeter. Plaintiff United Food and Commercial Workers Local 204 ("the Union") is the certified collective bargaining representative for Harris–Teeter's Charlotte warehouse employees. For a number of years LeGrand, Sullivan, and Person have been employee bargaining representatives of the Union in its negotiations with Harris–Teeter. Since 1976, the Union, or its immediate predecessor,[1] has been certified by the NLRB as the collective bargaining representative for Harris–Teeter's Charlotte warehouse employees. Since 1976, Harris–Teeter and the Union have been engaged in collective bargaining negotiations, but, to date, their efforts have failed to result in a collective bargaining agreement. Plaintiffs are seeking in this action to sue on their own behalf and on behalf of a class of all similarly situated Harris–Teeter warehouse employees represented by the Union.[2]

Defendants are (1) Harris–Teeter, (2) its parent corporation, Ruddick Corporation ("Ruddick"), (3) Alan T. Dickson ("Dickson"), Ruddick's chief executive officer, and (4) the Ruddick Savings and Protection Plan ("the Plan"). Harris–Teeter is a North Carolina corporation, and it is a wholly-owned subsidiary of Ruddick, which is also a North Carolina corporation. Ruddick is the sponsor of the Plan, the Plan Administrator, and a contributing employer to the Plan. Harris–Teeter is also a contributing employer.

On September 30, 1983, Ruddick adopted the Plan, which is a combination cash or deferred profit sharing plan and tax credit employee stock ownership plan set up for the benefit of Ruddick's and Harris–Teeter's employees. Since that time, the Plan has been amended twice: once on September 24, 1984 and once on July 30, 1986. (*See* Williford Aff., Exhs. A, B, & C (copies of different versions of § 3.1(a) of the Plan)).

In a letter, dated October 4, 1983, Harris–Teeter offered to include the unionized employees in the Plan beginning on the date that the parties executed a collective bargaining agreement. (Def'ts' Motions to Dismiss, Exh. A ("Upon execution of [the collective bargaining agreement], the Company agrees to implement and maintain for the duration of this agreement the Ruddick Savings and Protection Plan for all employees covered by [the] agreement.")). On November 29, 1983, Harris–Teeter again proposed at a negotiating session with the Union that the unionized employees be included in the Plan as part of a total collective bargaining agreement. (Def'ts' Motions to Dismiss, Exh. B (minutes of Nov. 29th meeting)). The minutes of the November 29th meeting show that the following exchanges occurred:

Coutlakis [Union Representative]: We're ready now to talk about PAYSOP.

---

**1.** United Food and Commercial Workers Union, Local 525 appears to have been the Union's predecessor. (*See* Def'ts' Verified Motions to Dismiss, Exh. G. (NLRB charge 11–CA–12880)).

**2.** Plaintiffs allege that this class includes approximately 300 to 400 persons and that joinder of so many persons is impracticable. This Court will decide the class action issue another day.

**1554**

Teeter [Employer Representative]: Showed the tape and gave a presentation on the 401(k).

LeGrand [Union Representative]: Are you proposing that this go into effect now?

Pollard [Employer Representative]: *This is part of a total agreement.*

LeGrand: This is a change in what you've done in the past. This is a change in past practice.

Pollard: This is not a change in past practice. Some things we have done without a total agreement and we are proposing this as part of a total agreement. This occurred to us when we proposed a move to Indian Trail and you wanted it tied to a total agreement.

LeGrand: This is part of a campaign to get rid of the union.

Pollard: We have no campaign. We understand that there are some employees that want to get rid of the union.

Coutlakis: *We propose that you implement the 401(k) plan now for the bargaining unit.*

Pollard: Do you want us to treat all employees alike and not negotiate with you?

Coutlakis: Don't use this as a club.

Pollard: This will help us get closer to reaching a total agreement.

. . . .

(LeGrand, Bailey [Union Representative] and Coutlakis pouted verbally about the 401(k) being tied to a total agreement.)

(Def'ts' Motions to Dismiss, Exh. B (emphasis added)).

On March 29, 1985, the Union filed charges with the NLRB alleging that Harris–Teeter's failure to include the unionized employees in the Plan punished them for their Union affiliation in violation of Section 8(a)(3) of the NLRA, 29 U.S.C.A. § 158(a)(3) (West 1973), and constituted bad faith bargaining in violation of Section 8(a)(5) of the NLRA, 29 U.S.C.A. § 158(a)(5) (West 1973). (*See* Def'ts' Motions to Dismiss, Exh. C). The March 29th NLRB charge states, in pertinent part, the following:

Since January 31, 1985, and thereafter, the employer has violated the employees['] Section 7 rights by witholding [sic] wage increases and other benefits from the warehouse employees because of their support of the union while granting these same benefits to nonbargaining unit employees in the stores, and while at the same time unilaterally applying benefit take away[s] (e.g., health insurance changes) to store and warehouse employees alike. By such disparate treatment the employer is punishing its warehouse employees for supporting the union.

Further, the company has refused to bargain in good faith with the union concerning wages and benefits for the warehouse employees and [has] refused to supply requested information on wage increases in the stores and [has] unilaterally instituted a change in the pay day without bargaining in good faith.

(Def'ts' Motions to Dismiss, Exh. C).

On May 8, 1985, after conducting a factual investigation, the NLRB's Regional Director, Willie L. Clark, Jr. ("Clark"), refused to issue a complaint on the basis of the March 29th charges. (Def'ts' Motions to Dismiss, Exh. D). In so ruling Clark stated, in pertinent part, the following:

As a result of the investigation, it appears that there is insufficient evidence of a violation to warrant further proceedings with regard to certain Section 8(a)(1), (3), and (5) allegations. Thus, the evidence does not support a finding that the Employer unlawfully withheld a wage increase and 401(k) savings plan from bargaining unit employees while at the same time granting these benefits to non-unit employees. Rather, the evidence revealed that *since 1983 the Employer has lawfully assumed a bargaining position of offering in a package [collective bargaining] proposal the same wage and [401(k)] benefit proposal to unit employees that were implementing for non-unit employees.* . . . .
Under these circumstances, I am refusing to issue [a] complaint as to the aforementioned 8(a)(1), (3) and (5) allegations.

(Def'ts' Motions to Dismiss, Exh. D (emphasis added)). The Union did not appeal the NLRB's Regional Director's decision to the NLRB's General Counsel.

In a letter to Harris–Teeter, dated July 14, 1988, Renee L. Bowser ("Bowser"), Assistant General Counsel of the United Food and Commercial Workers International Union, AFL–CIO,[3] stated that during a negotiating meeting held on June 27, 1988 the Union had "reiterated its previous request that Harris–Teeter immediately permit the warehouse employees to participate in the Ruddick ... 401(k) Plan rather than denying their participation until the parties execute a [collective] bargaining agreement...." (Def'ts' Motions to Dismiss, Exh. E). Bowser further stated in her July 14th letter that Harris–Teeter, through its attorney Jonathan Pollard, "rejected this renewed request as it did the Union's request for participation of the Union-represented employees when the 401(k) plan was implemented in 1983." (*Id.*).

On August 4, 1988, Bowser, on behalf of the Union, filed a charge with the NLRB alleging that Harris–Teeter's refusal to allow unionized employees to participate in the Plan violated Section 8(a)(5) of the NLRA, 29 U.S.C.A. § 158(a)(5) (West 1973). (Def'ts' Motions to Dismiss, Exh. F). In the August 4th charge, Bowser alleged, in pertinent part, the following:

> The Employer has engaged in bad faith and surface bargaining with no real intention of reaching an agreement covering the warehouse employees. .... In addition, the Employer has bargained with the intention of preventing the Union-represented employees from gaining any greater benefits or even benefits equal to its non-represented employees. As an example, the Employer has refused to allow the warehouse employees to participate in its tuition refund program and the savings and protection plan (401k Plan).

(*Id.*).

In a letter, dated August 15, 1988, addressed to Defendant Dickson, the Admin-

istrator of the Plan, Plaintiff LeGrand requested that he, as an individual, be permitted to participate in the Plan. (Harkavy Aff., Exh. C). In a letter dated August 24, 1988, Donald B. Williford, Dickson's delegatee, responded to LeGrand's August 15th letter:

> As you know, the employees of Harris Teeter's Indian Trail and Chesapeake Drive Bakery facilities are represented by the United Food and Commercial Workers Union Local # 204. Whether any such employee participates in the Ruddick Savings and Protection Plan is a mandatory subject of bargaining between the Company and the union. Since this item has been proposed previously, I suggest that your concerns can be better answered by your union.

(Harkavy Aff., Exh. D).

In a letter dated September 1, 1988, LeGrand requested that Dickson permit him to inspect and copy various documents relating to the Plan, including (1) the Plan itself, (2) the trust agreement for the Plan, along with all amendments to the trust agreements, and (3) the summary plan description. (Harkavy Aff., Exh. E). It appears from the record that Dickson did not respond to this request.

In a letter dated September 15, 1988, Clark, the NLRB's Regional Director, notified Harris–Teeter that the Union's August 4th charge had, with his approval, been withdrawn. (Def'ts' Motions to Dismiss, Exh. F).

On September 22, 1988, Plaintiffs filed their Complaint, claiming, on their own behalf and on behalf of all of Harris–Teeter's Charlotte warehouse employees, that they are "participants" of the Plan, as defined by the Plan. Plaintiffs allege in their Complaint that Defendants have wrongfully refused to recognize the individual Plaintiffs and the members of the class as participants in the Plan, and they assert that Defendants (1) should be compelled to recognize the individual Plaintiffs and all of the class members as participants in the Plan and (2) should be compelled to grant

---

**3.** The Union's international affiliate.

to the individual unionized employees their rights and benefits under the Plan.

Amendment No. 2 to the Plan, which is the current version, defines "participant" as any employee "who is included in the Plan pursuant to Article III" of the Plan. (Harkavy Aff., Exh. A, Plan Amendment No. 2, § 2.15). Article III of the Plan, as amended, provides, in pertinent part, the following:

3.1 *Requirements for Participation*

(a) A person who is not already a Participant shall become a participant on the first January 1 on which he or she meets all of the following eligibility requirements:

(i) The individual is an Employee is of the Employer;

(ii) On or before September 30 of the preceding calendar year, the individual completed a qualifying year of service . . .;

(iii) The individual is not a nonresident alien;

(iv) The individual is not a member of a unit which is covered by a collective bargaining agreement (unless the agreement provides for his or her participation in this Plan).

(Harkavy Aff., Exh. A, Plan Amendment No. 2, § 3.1).[4]

The individual Plaintiffs contend that they are not members of a unit "covered by a collective bargaining agreement" because the Union and Harris–Teeter have never entered into a collective bargaining agreement. Despite the nonexistence of a collective bargaining agreement, Plaintiff LeGrand has asked as an individual, on at least one occasion, to be permitted to participate in the Plan under Article III. (Harkavy Aff., Exh. C, D).[5] Harris–Teeter, however, has refused to allow LeGrand and other individual unionized employees to join the Plan. (*Id.*)

Plaintiffs allege that Defendants have, by such refusals, deprived the individual unionized employees of their rights under the Plan, including, but not limited to, the right to defer and shelter income through the establishment of Deferred Income Accounts, the right to the potential earnings that would have accrued on these accounts, the availability of loans and distributions, and the opportunity to receive allocations of contributions of shares of Ruddick stock, along with dividends and voting rights on such stock. In addition, Plaintiffs allege that Defendants have failed to provide the individual Plaintiffs and the class members with reports required under Title I of ERISA and to which they are entitled as participants in the Plan.

In Count I of Plaintiffs' Complaint, Plaintiffs allege that Defendants have failed to observe the terms of the Plan and have, consequently, violated Plaintiffs' rights, secured by ERISA and the Plan. In Count II of the Complaint, Plaintiffs allege that Harris–Teeter, Ruddick, and Dickson have breached their fiduciary duties under ERISA. Finally, in Count III of the Complaint, Plaintiffs allege that Defendants have failed to provide to Plaintiffs various reports mandated by ERISA, including, but not limited to, a summary plan description and a summary of annual reports. Plaintiffs are seeking declaratory relief, injunctive relief, and attorneys' fees and costs.

---

**4.** Previous versions of this Section were substantially the same. (*See* Williford Aff., Exh. A, B, & C). In the previous versions, subsection (iv) read as follows:

(iv) The individual is not employed *in a bargaining unit* covered by a collective bargaining agreement (unless it provides for participation in this Plan).

(Williford Aff., Exh. A & B (emphasis added)).

Defendants have obviously designed § 3.1 of Amendment No. 2 to the Plan to conform to the applicable sections of the Internal Revenue Code ("IRC"). The IRC, however, was not intended to justify exclusions of unionized workers from employee benefit pension plans. For a

plan to be eligible as a "qualified trust" under § 401 of the IRC, unionized employees who are not yet "covered" by a collective bargaining agreement cannot be excluded from participation eligibility in the plan. *See* 26 U.S.C.A. § 410(b) (West 1988). Plaintiffs are not covered, and, therefore, it appears that the Plan should not be eligible as a qualified trust.

**5.** Plaintiffs allege that Defendants have refused to recognize other unidentified individual employees as participants in the Plan, but the record, so far, is devoid of evidence regarding such refusals.

Plaintiffs assert that this Court has subject matter jurisdiction under three statutory grants of jurisdiction: 28 U.S.C.A. § 1331 (West Supp.1988) (federal question); 28 U.S.C.A. § 1337 (West Supp.1988) (commerce legislation); and 29 U.S.C.A. § 1132(e)(1) (West 1985) (civil actions to enforce ERISA).[6]

As mentioned before, Defendants seek dismissal on three different grounds: (1) dismissal of Plaintiffs' Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; (2) dismissal of Plaintiffs' Complaint because it is barred by the applicable statute of limitations; and (3) dismissal of the Union because it has no standing to bring this lawsuit against Defendants.

### III. DISCUSSION

#### A. *Subject Matter Jurisdiction*

█ This Court will consider Defendants' Rule 12(b)(1) challenge first, since all other defenses and objections will become moot and will not need to be determined if the Complaint is dismissed on this ground. *E.g.,* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 548 (1969).

Defendants claim that this Court lacks subject matter jurisdiction over this action because the NLRB has exclusive jurisdiction over activity that is arguably subject to § 7 or § 8 of the NLRA. As will be explained below, this Court holds that it has subject matter jurisdiction under Section 1132(e)(1) of Title 29, United States Code, to entertain the individual Plaintiffs' suit to enforce their rights, if any, under the terms of the Plan and to clarify their rights, if any, under the terms of the Plan.

"As a general rule, federal courts do not have jurisdiction over activity [that] is 'arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Re-

lations Board.'" *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982) (quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)); *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539, 108 S.Ct. 830, 832 n. 4, 98 L.Ed.2d 936 (1988). Yet, when there is an independent federal remedy that is *consistent* with the NLRA, then a plaintiff may have a choice of federal remedies, *Connell Constr. Co., Inc. v. Plumbers & Steamfitters Local Union No. 100,* 421 U.S. 616, 636 n. 17, 95 S.Ct. 1830, 1841 n. 17, 44 L.Ed.2d 418 (1975), and may be able to proceed in federal court. *See, e.g., Hospital Employees' Div. of Local 79 v. Mercy–Memorial Hospital, Corp.,* 862 F.2d 606, 608 (6th Cir.1988) (holding that § 302 of the LMRA is not "preempted" by NLRB's exclusive jurisdiction to hear § 7 or § 8 NLRA cases). Plaintiffs claim that in this case they are only pursuing their independent federal rights and remedies under ERISA, and they assert that they are not seeking any relief related to collective bargaining. This Court agrees and believes that the court's discussion in *Mercy–Memorial Hospital,* 862 F.2d 606, can easily be adapted to apply to the situation in the present case:

> Congress created the NLRB to administer the new regulatory structure established in the National Labor Relations Act. The federal scheme was designed to achieve uniformity in our national labor policy. The need for a centralized administrative agency to enforce the Act was seen as crucial to achieving the desired national uniformity. The Supreme Court fashioned a special preemption doctrine to protect the centralization of administration envisioned by Congress. In *Garmon,* the Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act [NLRA], the *States* as

---

**6.** Section 1132(e)(1) states, in pertinent part, the following:

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by

... a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

29 U.S.C.A. § 1132(e)(1) (West 1985).

well as the federal court, must defer to the exclusive competence of the National Labor Relations Board *if the danger of state interference* with national policy is to be averted." The *Garmon* and other doctrines are not designed to preempt other independent rights created by Congress....

*Id.* at 608 (emphasis in the original; citations omitted).

ERISA's legislative history indicates that the federal courts are empowered to evolve rules of law and procedure to govern various aspects of the employee benefit field. *See Taylor v. Bakery & Confectionary Union,* 455 F.Supp. 816, 818 (E.D.N.C. 1978). ERISA civil actions filed in federal courts "are to be regarded as arising under the laws of the United States in similar fashion to those brought under Section 301 of the Labor–Management Relations Act of 1947." H.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 5038, 5107. "The courts have long fashioned federal common law relating to collective bargaining under LMRA § 301, 29 U.S.C. § 185." *Taylor v. Bakery & Confectionary Union,* 455 F.Supp. at 818; *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). It is well-settled that section 301 of the LMRA provides an independent federal remedy. Just as the NLRA does not in all cases preempt suits brought pursuant to section 301 of the LMRA, *Amalgamated Clothing & Textile Workers Union, AFL–CIO v. Facetglas, Inc.,* 845 F.2d 1250, 1252–53 (4th Cir. 1988) ("jurisdiction under section 301 is precluded if the contractual dispute is 'primarily representational' "), the NLRA does not necessarily preempt all ERISA suits.

The parties have not provided, and this Court has not found, any authority explicitly holding that the *Garmon* doctrine, or any other preemption doctrine, preempts ERISA suits brought pursuant to 29 U.S.C. § 1132 to enforce or to determine the rights of individual participants in a plan. This Court is of the opinion that ERISA is an independent liability creating statute designed by Congress to provide judicial remedies for the sort of wrongful conduct Plaintiffs have alleged in their Complaint; in the present case ERISA is not preempted by the NLRA or the NLRB's exclusive jurisdiction.

The present case is easily distinguishable from *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co. Inc.,* 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). In *Advanced Lightweight Concrete,* the Court held that under sections 502 and 515 of ERISA the federal courts have jurisdiction over trustee suits brought to collect contributions that an employer has promised, as part of a collective bargaining agreement, to make to a multiemployer pension plan. *Id.* 108 S.Ct. at 832 (ERISA "remedy is limited to the collection of 'promised contributions.' "). The Court also held, however, that under ERISA the federal courts do *not* have jurisdiction over trustee suits that are brought merely to recover delinquent employer contributions that the employer may remain statutorily obligated to make, pursuant to the NLRA, after the expiration of the collective bargaining agreement. The plaintiffs in *Advanced Lightweight Concrete* alleged that the defendant's unilateral decision to change the terms and conditions of employment by discontinuing, after the expiration of the term of the collective bargaining agreement, its contributions to the multiemployer pension plan constituted a breach of its duty to bargain in good faith and constituted a violation of § 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5). *Advanced Lightweight Concrete,* 108 S.Ct. at 832. The district court and court of appeals ruled that defendant was entitled to summary judgment because ERISA did not apply to an employer's obligations under § 8(a)(5) of the NLRA, and because the NLRB has exclusive jurisdiction over claims alleging that an employer has breached its statutory duty to bargain in good faith. *Id.* 108 S.Ct. at 833–834. The Supreme Court affirmed. *Id.* 108 S.Ct. at 834.

In the present case, unlike *Advanced Lightweight Concrete,* Plaintiffs are only seeking relief under ERISA. Plaintiffs are not trying to use ERISA to pursue a reme-

dy for a right created by the NLRA. Instead, Plaintiffs are merely seeking to use ERISA to pursue remedies for rights allegedly created by ERISA.

Plaintiffs are not suing because Defendants have refused to comply with the *Union's* repeated requests that the unionized employees be permitted to participate in the Plan; that sort of lawsuit would indeed appear to raise collective bargaining issues. Plaintiffs are suing because Defendants have, on at least one occasion, refused to comply with *an individual unionized employee's* recent request to be allowed to participate in the Plan.[7] Plaintiffs in the present lawsuit are merely seeking enforcement of the terms of a plan covered under ERISA, and ERISA provides a remedy that may be pursued in the federal district courts. The individual Plaintiffs are seeking to recover on promises—the terms of the Plan—because the Plaintiffs appear to fit within the Plan's definition of a "participant." Plaintiffs are not seeking vindication of their collective bargaining rights. In short, this lawsuit does not contain issues that are "primarily" related to the Union's representation of the employees or its negotiations with Defendants. *See Amalgamated Clothing & Textile Workers Union, AFL–CIO v. Facetglas, Inc.,* 845 F.2d at 1252.

■ A short digression is in order at this point. Defendants have asserted that they could not allow the individual Plaintiffs to participate in the Plan because such "unilateral" action would constitute an unfair labor practice. Defendants' assertions on this point are without merit. On several occasions, the Union has indicated that it wants its employees to be included in the Plan, and, therefore, the Union has acquiesced in such inclusion. It is certainly true that it is a violation of the duty to bargain collectively, imposed by § 8(a)(5) of the NLRA, for an employer, without first consulting a union with which it is carrying on bona fide contract negotiations, to institute changes regarding matters that are

subjects of mandatory bargaining under § 8(d) and which are, in fact, under discussion. *NLRB v. Katz,* 369 U.S. 736, 737–738, 82 S.Ct. 1107, 1108–1109, 8 L.Ed.2d 230 (1962). *See generally Employer's Unilateral Award of Fringe Benefits as Unfair Labor Practice Under § 8(a)(5) of the National Labor Relations Act, as Amended (29 USC § 158(a)(5)),* 6 A.L.R. Fed. 940 (1971). The *Katz* Court recognized, however, that there is no violation of the NLRA when the employer, after notice and consultation with the union, institutes a wage increase that is *identical* to one which the union has rejected as being too low. *NLRB v. Katz,* 369 U.S. at 745 n. 12, 82 S.Ct. at 1112–1113 n. 12 (citing with approval *NLRB v. Bradley Washfountain,* 192 F.2d 144, 150–152 (7th Cir.1951), and *NLRB v. Landis Tool Co.,* 193 F.2d 279 (3d Cir.1952)). Here, the Union has explicitly given its blessings to Defendants to include the unionized employees in the Plan, and, therefore, the Union would not be able to bring a credible NLRB charge against Defendants if the unionized employees were allowed to participate in the Plan. The NLRB "is authorized to order the cessation of behavior, which is in effect a refusal to negotiate, or which directly obstructs or inhibits the actual process of discussion, or which reflects a cast of mind against reaching agreement," *NLRB v. Katz,* 369 U.S. at 747, 82 S.Ct. at 1113, but the NLRB surely is not designed to prevent an employer from offering, with the union's acquiescence, additional benefits to unionized employees. Therefore, Defendants' fear of an NLRB unfair labor practices charge is without substance.

## B. *Statute of Limitations*

Defendants claim that Plaintiffs' Complaint fails to state a claim upon which relief can be granted because Plaintiffs have failed to bring this action within the time permitted by the appropriate statute of limitations. As will be explained below, this Court holds that the individual Plain-

---

**7.** LeGrand's August 15th letter is the only instance of an individual employee request appearing in the record at this point.

tiffs' Complaint has been filed within the applicable statute of limitations.

■ Count I of Plaintiffs' Complaint appears to be brought pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) which state, in pertinent part, the following:

A civil action may be brought—

(1) by a participant or beneficiary—

(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan; . . . .

29 U.S.C.A. § 1132(a)(1)(B), (a)(3) (West 1985). ERISA provides no explicit limitation period for bringing a private cause of action pursuant to 29 U.S.C. § 1132(a), and, therefore, the federal courts must refer to the forum state's law and apply the most analogous state statute of limitations. *Dameron v. Sinai Hospital, Inc.*, 815 F.2d 975, 981 (4th Cir.1987); *Fogerty v. Metropolitan Life Ins. Co.*, 850 F.2d 430, 432 (8th Cir.1988); *Trustees For Alaska Laborers v. Ferrell*, 812 F.2d 512, 516–517 (9th Cir.1987); *see Limitations of Actions Applicable to Action by Trustees of Employee Benefit Plan to Enforce Delinquent Employer Contributions Under ERISA (29 USCS § 1132(a))*, 90 A.L.R.Fed. 374 (1988) (collecting cases determining which statute of limitations applies when action is brought by trustees of plan). While the matter is not free from doubt, this Court is

of the opinion that Plaintiffs' claims in Count I are most analogous to claims for breach of contract. *See Dameron v. Sinai Hospital, Inc.*, 815 F.2d at 981. North Carolina has a three-year statute of limitations for actions upon contracts or obligations or liabilities arising out of contracts, express or implied, N.C.Gen.Stat. § 1–52(1) (1983).[8]

■ The statute of limitations begins to run when the claim accrues. Defendants did not breach their duty to include Plaintiffs under the terms of the Plan and ERISA until they explicitly refused LeGrand's request, which was made as an individual and independently of the Union. Therefore, Plaintiffs' claims in Count I did not accrue until Defendants refused to comply with LeGrand's request, as an individual, to be a participant in the Plan.[9] This suit was filed in a timely fashion after LeGrand's request was denied, and, therefore, this Court will deny Defendants' Motion to Dismiss as to Count I.

Count II of Plaintiffs' Complaint alleges breach of fiduciary duty. Section 1113 of Title 29, United States Code, provides a three-year statute of limitations for actions against fiduciaries for breach of fiduciary responsibility. Again, this claim did not accrue until Defendants refused to comply with LeGrand's request that he be permitted to participate in the Plan. Therefore, this Court will deny Defendants' Motion to Dismiss as to Count II.

■ Count III of Plaintiffs' Complaint is brought pursuant to 29 U.S.C.A. § 1132(c) (West Supp.1988), which governs administrator refusals to provide requested information. This claim accrued when Defendants failed to respond to LeGrand's request for information about the Plan. This sort of claim is also most analogous to a breach of contract claim, and, therefore, this Court will deny Defendants' Motion to

---

**8.** Section 1–52(2) of the North Carolina General Statutes also provides for a three-year limitations period for actions based upon a liability created by statute, state or federal, when there is no time mentioned in such statute. Therefore, this Court holds that § 1–52(2) provides an alternative limitations period.

**9.** Indeed, each time Defendants refuse to allow an individual unionized employee to participate in the Plan, a new breach occurs, and a new claim accrues. *See Dameron v. Sinai Hospital, Inc.*, 815 F.2d at 982; *see also Meagher v. International Assoc. of Machinists and Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir.1988).

Dismiss as to Count III because the Complaint was filed in a timely fashion after this claim accrued.

## C. *The Union's Standing*

■ Defendants claim that the Union has no standing to pursue this action. This Court holds that the Union lacks standing as a plaintiff under Section 1132(a) of Title 29, United States Code, because it is neither a participant nor a beneficiary of the Plan. *New Jersey State AFL–CIO v. New Jersey*, 747 F.2d 891, 892–893 (3d Cir.1984); *Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 152–154 (3d Cir.1985) (explaining *New Jersey State AFL–CIO*). *Contra International Ass'n of Bridge Workers Local No. 111 v. Douglas*, 646 F.2d 1211 (7th Cir.), *cert. denied*, 454 U.S. 866, 102 S.Ct. 328, 70 L.Ed.2d 166 (1981). Although Plaintiffs' arguments to the contrary are creative, they are meritless.

## D. *Rule 11 Sanctions*

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Defendants have requested that this Court impose sanctions upon Plaintiffs for filing the Complaint in this case. In light of the above rulings, this Court is of the opinion that Rule 11 sanctions are not warranted.

## IV. CONCLUSIONS

NOW, THEREFORE, IT IS ORDERED:

(1) Defendants' Verified Motions to Dismiss with Supporting Authority, filed November 14, 1988, are DENIED IN PART and GRANTED IN PART;

(2) Plaintiff United Food and Commercial Workers Local 204 is DISMISSED as a plaintiff for lack of standing; and

(3) Defendants' Motion for Sanctions, filed November 14, 1988, is DENIED.