## LICENSED DIVISION DISTRICT NO. 1 MEBA/NMU, AFL–CIO, Plaintiff–Appellee,

### v.

**Clayton Eugene DEFRIES; Clyde E. Dodson; Claude W. Daulley; R.F. Schamann; Karl Landgrebe; Donald Masingo, Defendants–Appellants (Two Cases).**

### Nos. 91–2033, 91–2056.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1991.

Decided Aug. 26, 1991.

---

Robert J. Higgins, Dickstein, Shapiro & Morin, Washington, D.C., argued (Angelo V. Arcadipane, Joseph E. Kolick, Jr., Marcus C. Migliore and David B. Killalea, on brief), for defendants-appellants.

Susan Souder, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., argued (Nancy E. Paige, Charles R. Bacharach, Mark H. Kolman, on the brief), for plaintiff-appellee.

Before PHILLIPS and WILKINS, Circuit Judges, and HALLANAN, District Judge for the Southern District of West Virginia, sitting by designation.

**476**

## OPINION

PHILLIPS, Circuit Judge:

The Licensed Division of District No. 1 of the Marine Engineers' Benefits Association/National Maritime Union (Licensed Division), filed suit seeking a declaratory judgment that the Licensed Division, and not its "parent union," District No. 1—MEBA/NMU (District No. 1), had authority to appoint the union trustees of benefit plans of recently merged unions. The Licensed Division sought the ruling after it had tried to remove the six defendants-appellants as the union trustees, but the defendants had refused to vacate their offices. The district court found that under the applicable agreements, the Licensed Division has appointment authority. We agree, and affirm.

### I

The controversy giving rise to this action arose because of a merger in March 1988 between District No. 1—Pacific Coast District (PCD), which was composed mostly of supervisory maritime officers, and the National Maritime Union (NMU), which was composed of non-supervisory maritime workers. The new union was called "District No. 1—MEBA/NMU." As part of the structuring of the new union, and to accommodate potential problems with having supervisory and non-supervisory employees in the same bargaining unit, *see generally* 29 U.S.C. § 164(a), two divisions were created: the Licensed Division, which includes supervisory maritime personnel licensed by the Coast Guard and consists of all the former employees of PCD; and the Unlicensed Division, which includes all other members and consists of all members of NMU. At the time of the merger, defendants, who hold offices in the MEBA/NMU, placed themselves in control of the Licensed Division, and appointed themselves as trustees of the benefits plan.

The merger of the unions was approved by a vote of the membership of both unions, and the merger agreement included changes to the relevant union constitutional provisions. However, no amendment was made to the trust agreements that govern administration of the employer-employee controlled trusts for pension and medical benefits, vacation benefits, and training. (Pursuant to 29 U.S.C. § 186(c)(5)(B), employees and employers appoint equal members to control these multi-employer, multi-union plans.) Those trust agreements provide that "the Union" should appoint the trustees, but the antecedent to "the Union" in the agreements, District No. 1—Pacific Coast Division, no longer exists. This raised the question that prompted this litigation: what, under the relevant documents, is now "the Union"? It is a question that requires answer because in new elections the defendants were all defeated as the leaders of the Licensed Division. The new leadership wanted to appoint the trustees, but the old leadership, who remain officers of the District No. 1 union, resisted.

The district court, after a trial, held that the Licensed Division is "the Union." This timely appeal by the defendant-trustees followed.

### II

An initial question is whether the district court had jurisdiction to entertain an action by the Licensed Division, which is the only named plaintiff. On the challenge of subject matter jurisdiction, the district court held that though the Licensed Division did not have standing as a "fiduciary" or "participant" to bring this action under 29 U.S.C. § 1132 of ERISA (authorizing suits by a "participant, beneficiary, or fiduciary"), the officers of the division would have. Building on this, the court held that though the plaintiff "may not have fully stated the correct federal statutory provision under which the claim arises [plaintiff relied on ERISA § 1132] or fully stated the correct plaintiff(s)," such failure does not warrant dismissal, since "[i]t is well settled that courts may excuse pleading defects if the facts alleged in the complaint and relief requested demonstrate the existence of a substantial federal question."

■ We agree that in an appropriate situation a court may excuse pleading defects

for the purpose here in issue. In *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.1990), for example, we held that though a plan administrator did not have standing to sue under § 1132, it could be deemed to have invoked general federal question jurisdiction under 28 U.S.C. § 1331, even though the claim as pleaded never invoked that statute as its jurisdictional basis. In that case, faced with a claim "central" to ERISA yet one that fell "in the interstices of this comprehensive and labyrinthine statute[,]" we held that the "pleading defect" of not invoking the right statutory provision could be overlooked when "the facts alleged in the complaint and the relief requested demonstrate the existence of a substantial federal question." 906 F.2d at 988. Lack of standing, however, is not a "pleading defect" that can be excused by such a taking of judicial notice. Though such a defect might be cured by timely amendment, *see generally* Fed.R.Civ.P. 15; 6 C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure: Civil 2d* § 1474 (1990), and was attempted here, the curing amendments were offered belatedly (post-judgment), and were rightly rejected.

█ Consequently, jurisdiction in this case can only be grounded in a determination that the Licensed Division, as sole named plaintiff, has standing under ERISA § 1132 to maintain this action, or that it may bring this action as one asserting a claim "central to ERISA," hence cognizable as one implicitly invoking the general federal question jurisdiction of § 1331 under the reasoning of *Provident Life*. Though we think that subject matter jurisdiction might be upheld on either basis, we conclude that it is properly rested here on the basis that the Licensed Division has standing as a "fiduciary" to invoke the jurisdiction conferred by ERISA § 1132.

The Licensed Division's contention, not accepted by the district court, that it had standing to sue as a "fiduciary" under § 1132 boils down to this. Section 1132(a)(3) provides that a civil suit may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice

which violates any provision of this subchapter or the terms of the plan...." In turn, "fiduciary" is defined thusly: "A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan ..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The Licensed Division is a fiduciary "to the extent" that it exercises "discretionary authority or discretionary control in the administration of a plan." Removing and replacing trustees is a manifestation of such an exercise of discretionary authority in the administration of the plan. Therefore, "to the extent" the Licensed Division has authority to appoint trustees (concededly the issue on the merits of the case) it is a fiduciary.

Appellants challenge this assertion on two levels. First, they contend, on a semantic level, that a union appointing trustees cannot exercise "authority or control" respecting the administration of a plan since by law, *id.* § 186(c)(5)(B), the union only can appoint one-half of a plan's trustees, and a majority of trustees is needed for the plan to act. Hence, appellants say fifty percent is not "control or authority." This argument is unavailing because it depends on an unduly restrictive interpretation of "control or authority." The statute defines fiduciary as a person who "exercises *any* discretionary authority" over the management of a plan. In common usage "authority" includes "power to influence or command thought, opinion, or behavior." *Webster's Ninth New Collegiate Dictionary* 117 (1987). Appointing one-half of a governing board reflects a "power to influence" the behavior of an enterprise. That is all that is required to satisfy the statutory definition.

The second challenge is similarly unavailing. It relies on cases that have emphasized the strict limiting effect on the definition of "fiduciary" that is imposed by the qualifying phrase "to the extent." As the Fifth Circuit has noted, "[t]he phrase 'to the extent' indicates that a person is a fiduciary only with respect to those aspects

of the plan over which he exercises authority or control." *Sommers Drug Stores v. Corrigan Enters., Inc.,* 793 F.2d 1456, 1459–60 (5th Cir.1986). On this basis, a number of courts have held that a union does not have standing under § 1132 simply to sue for pension benefits on behalf of its members since in such a representative role it is not acting as a fiduciary. *See, e.g., Forys v. United Food & Commercial Workers Int'l Union,* 829 F.2d 603, 607 (7th Cir.1987) (union is not a fiduciary when it "performs *solely* the task of presenting the claims of its individual members to the fund"); *New Jersey State AFL–CIO v. State of New Jersey,* 747 F.2d 891, 892–93 (3d Cir.1984) (union has no standing to bring an ERISA action to clarify the rights of its members to future benefits); *United Food & Commercial Workers Local 204 v. Harris–Teeter Super Markets, Inc.,* 716 F.Supp. 1551, 1561 (W.D.N.C.1989) (union challenging employer's decision to deny an employee plan participation does not have standing under ERISA § 1132).

But the action brought here is not brought in any such representational capacity; rather it is brought directly by the Licensed Division to assert a claim of authority to appoint plan trustees. And, as we already have concluded, a union exercises the discretionary authority of a fiduciary when it appoints trustees. Consequently, we hold that a union claiming such authority has standing to sue as a fiduciary "to the extent" that it challenges, as violative of ERISA or the terms of the plan, any act or practice which pertains to the appointing and replacing of trustees. Other courts are in accord. *See Leigh v. Engle,* 727 F.2d 113 (7th Cir.1984); *Moehle v. NL Indus., Inc.,* 646 F.Supp. 769 (E.D.Mo.1986). And we think this view comports with the legislative history of ERISA: "Under this definition, fiduciaries include officers and directors of a plan, members of a plan's investment committee and *persons who select these individuals."* H.R.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 5038, 5103 (emphasis supplied).

Accordingly, we hold that the Licensed Division has standing to bring this action under ERISA § 1132.

### III

■ Before reaching the core merits issue, we have a question whether the district court erred when it interpreted the terms of the trust agreements without first awaiting (or requiring) the Licensed Division to seek from the incumbent trustees an interpretation of the agreements and a decision as to whether the Licensed Division or District No. 1 was "the Union." The court essentially concluded that any exhaustion requirement that might exist should be held inapplicable here because requiring appeal to the incumbent trustees, asking them to interpret the agreement, would have been futile. Assuming that exhaustion of a claim such as that here made is required under any circumstances, we agree that it should not in any event apply here because of its futility.

Forced to decide the question, we might well hold that the general exhaustion requirement applied to ERISA claims does not apply to the claim here in issue. As we recently noted in *Makar v. Health Care Corp.,*

> ERISA does not contain an explicit exhaustion provision. Nonetheless, an ERISA *claimant* generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132....
>
> ... Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of *benefit claims;* provide a nonadversarial dispute resolution process; and decrease the costs and time of *claims settlement.*

872 F.2d 80, 82–83 (4th Cir.1989) (emphasis supplied) (citations omitted). The instant case does not involve a benefit claim, however, instead it goes to the fundamental administration of a plan. Consequently, this case is distinguishable from suits in-

volving claims, in which the intent of Congress that exhaustion occur is plain. This distinction is borne out by the conclusion in *Makar:* "In short, Congress intended plan fiduciaries, not the federal courts, to have primary responsibility for *claims processing.*" *Id.* at 83 (emphasis supplied). The same interests are not at stake, and the same congressional intent is not evident, when the dispute does not involve claims processing but the fundamental administration of a plan.

It is undisputed that the administrative appeals procedure ERISA requires in every plan does not apply to non-benefit challenges. *See* 29 U.S.C. § 1133 ("every employee benefit plan shall ... afford a reasonable opportunity to any participant whose *claim for benefits* has been denied for a full and fair review") (emphasis supplied). Yet it is this statutory requirement upon which the judicially-created exhaustion requirement is grounded. *See Makar,* 872 F.2d at 83. It follows, therefore, that if there is no statutory requirement for an appeals procedure respecting claims not involving benefits, the logic of the exhaustion requirement no longer applies. That this particular plan had no procedures for appeals of non-benefit issues is further evidence that the appeals procedure required by ERISA § 1133 has no application to non-benefit challenges. As the Second Circuit concluded, "although common law may have required a prior demand before bringing an action [challenging administration of a plan], Congress did not incorporate that doctrine into the ERISA statute." *Katsa-*

*ros v. Cody,* 744 F.2d 270, 280 (2d Cir.1984). *Accord Simmons v. Willcox,* 911 F.2d 1077, 1081 (5th Cir.1990) (employee could not avoid exhaustion requirement by simply recharacterizing her claim for benefits as one for breach of fiduciary duty).

Because the exhaustion question is, however, a fundamental one with wide implications that need not be decided here, we decline to do so, and hold, in agreement with the district court, that if the exhaustion requirement did apply to claims such as those here in issue, it should not be enforced here because of its obvious futility. The Licensed Division, under newly elected leadership which had ousted the officers who now fill the union trustee positions, seeks a ruling that it has the authority to remove the incumbent trustees and appoint new ones. Therefore, in pursuing an administrative appeal, the Licensed Division would be asking the incumbent trustees to interpret themselves out of a job. We think that under the circumstances, futility is apparent and we so hold. *See Makar,* 872 F.2d at 83 (discussing but rejecting claim of futility); *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980) (recognizing that "despite the usual applicability of the exhaustion requirement" of ERISA, such a requirement should be waived when resort to the administrative route is futile or the remedy inadequate). *Cf. Fizer v. Safeway Stores, Inc.,* 586 F.2d 182, 183 (10th Cir.1978) ("clear and positive showing of futility" required to suspend the exhaustion requirement under the LMRA).*

---

* The appellants complain that if exhaustion is not required, the Licensed Division will have been enabled to circumvent the provisions of the trust agreements that the trustees "shall have complete authority, in their sole and absolute discretion" to interpret the terms of the trust and the plan with final and binding effect, and the principles of deferential review of such interpretations laid down in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Again laying aside the question whether the claim made here is one required to be first administratively presented to the trustees, we observe that were that done here and a ruling unfavorable to the Licensed Division were to result, judicial review of the trustee's "interpretation" would be essentially the same as that we employ here, i.e., non-

deferential. Though *Bruch* directs deferential, abuse of discretion type review of trustee interpretations made under expressly conferred discretionary power, it also cautioned that where trustee conflict of interest is manifest, that should be factored into the judicial review process. 489 U.S. at 114–15, 109 S.Ct. at 956–57. Here, given the palpable conflict of interest that would be involved, we believe our review of such a "discretionary" ruling would effectively be what we apply here first instance to the interpretive question—plenary review.

We also note on this point the interesting counter-argument of the Licensed Division that what is involved here is not contract "interpretation" at all (so as arguably to be a matter for the trustees in the first instance) but contract "con-

## IV

This brings us finally to the merits of the appeal: whether the reference to "the Union" in the trust agreements confers on the Licensed Division, and not the "parent union," District No. 1—MEBA/NMU, the power to appoint trustees. Though we review this legal question *de novo,* we accept as not clearly erroneous the trial court's "finding of fact" that in this context the "trusts are an integral part of collective bargaining."

We confront the question of what is "the Union" because the trust agreements, which were not amended during the merger process, provide that "the Union" shall appoint trustees, and the antecedent to "the Union" in the agreements is District No. 1—Pacific Coast Division, which was abolished in the merger. Consequently, we must look to the documents effectuating the merger to determine which organization must be deemed to have assumed, for the purpose of appointing trustees, the mantle of "the Union."

The Agreement of Merger, the pact which the membership voted on to combine the unions, provides:

> The administration of all collective bargaining agreements held by District No. 1—PCD, MEBA, . . . shall become the responsibility of and will be performed by the Licensed Division.

This delegation of authority was augmented by a provision in the new District No. 1—MEBA/NMU Constitution, also approved by the membership, which states:

> The principal function of each Division shall be, in addition to such other powers and duties which it may exercise under and pursuant to the District Constitution, the adoption of policies in the matter of contract enforcement, and the negotiation, execution, enforcement, and administration of all collective bargaining agreements covering the Division. . . . The negotiation and administration of all collective bargaining agreements covering licensed officers shall be the exclusive responsibility of the Licensed Division. . . .

Based on this, the district court concluded that the Licensed Division has the authority to appoint trustees, since administration of the trusts is part of "administration of all collective bargaining agreements." We agree. We find this construction of the merger documents supported by a fair reading of the documents considered as a whole. A contrary conclusion would place persons not affiliated with the Licensed Division in the power to appoint trustees who would oversee a trust in which nine out of ten of the participants are current or retired members of the Licensed Division.

Appellants attack this conclusion on several fronts, but all their challenges fail. First, they contend that the premise that trusts are an integral and inseparable part of collective bargaining is contrary to law. For support they cite *NLRB v. Amax Coal Co.,* 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), in which the Court held that a union can pressure an employer to join a multi-employer trust fund without violating NLRA § 8(b)(1)(B), which prohibits a union from coercing an employer in the selection of a bargaining representative, since the Court found trustees of trust funds are *not* "representatives for the purposes of collective bargaining. . . ." *Id.* at 334, 101 S.Ct. at 2796. In that context, the Court held that "[t]he atmosphere in which employee benefit trust fund fiduciaries must operate . . . is wholly inconsistent with [the collective bargaining] process of compromise and economic pressure." *Id.* at 336, 101 S.Ct. at 2797. But significantly the Court went on to say that "the trustees

---

struction" (which is another process not expressly given to the trustees). The distinction, one powerfully made by Professor Corbin, is between "interpreting" the meaning of contractual text, and "construing" what the contracting parties would have intended had they anticipated something that they did not and so did not speak to at all in any contractual text. *See* 3 *Corbin on Contracts* § 534 (1960). The latter,

says the Licensed Division, is what is involved here, and that process, as distinguished from "interpretation," is nowhere committed to the trustees. In view of our disposition, we need not address that possibility beyond noting its close kinship to the question whether exhaustion of this fundamental non-benefit type claim is in any event subject to any exhaustion requirement found implicit in ERISA.

operate under a detailed written agreement, ... which is itself the product of bargaining between the representatives of the employees and those of the employer." *Id.* (footnote omitted).

This indicates that the *Amax Coal* Court saw trust agreements as a *product* of collective bargaining agreements. The Court's ultimate holding was based on its conclusion that trustees are not the agent of the appointing power (in that case the employer), since they are bound by the law of trusts which Congress incorporated into ERISA. *See id.* at 332–34, 101 S.Ct. at 2795–97. But this holding does not conflict with our decision here. Trusts are an integral part of collective bargaining *because* they are a product of that process. Simply because the duties of a trustee, once appointed, are carried out in an atmosphere quite different from the collective bargaining process does not negate the fact that the trust agreements are part of the collective bargaining process. We find the conclusion that trustees are not representatives for collective bargaining purposes wholly consistent with the conclusion that trusts are part of (or a product of) the collective bargaining process. These conclusions are compatible, and hence the appellants' contention fails.

Second, appellants contend that the "plain language" of the Agreement of Merger dictates only one result, that "the Union" is the District No. 1 and not the Licensed Division. The Agreement of Merger states:

The National Maritime Union ... agrees to merge *into* District No. 1—Pacific Coast District, of the [NMEBA], which shall thereafter change its name to District No. 1—MEBA/NMU of the [NMEBA].

Appellants place great reliance on this language to argue that the NMU was being merged *into* the PCD, which in the trust agreement is without question the "Union," and that the PCD—"the Union"—should change its name to District No. 1. Hence, they contend that "the Union" must be the successor entity with the new name,

District No. 1, and not the Licensed Division.

This argument holds some persuasive force. The problem, however, is that there are other provisions inconsistent with this language. Paragraph 3(d) of the Agreement of Merger provides:

The administration of all collective bargaining agreements held by District No. 1—PCD, MEBA, and the dispatching of jobs under its Shipping Rules, shall become the responsibility of and will be performed by the Licensed Division.

And, as indicated, the district court found as fact that the trusts here are part of collective bargaining. Hence, this provision directly conflicts with the "merged into" provision since it indicates that the administration of the trusts (meaning the appointment of the trustees) is expressly delegated to the Licensed Division.

■ Appellants respond that the Agreement of Merger also provides that all the "assets and liabilities" of the pre-merger unions will be "combined and integrated ... [and] held in the name of District No. 1—MEBA/NMU." It contends that the trust agreement is an "asset," and that "ownership" of the asset gives it the right to appoint the trustees. This contention also fails, since trust plans are decidedly *not* "assets" of unions, but instead are "owned" and "exist" for the benefit of the trust's participants and beneficiaries. *See Tuvia Convalescent Center v. National Union of Hosp. & Health Care Employees,* 717 F.2d 726 (2d Cir.1983).

Appellants finally assert that this holding misreads the Agreement of Merger because it failed to consider the national MEBA constitution. Article 8, § 6 provides that "[e]ach District shall ... have the authority ... to designate the Union Trustees for any ... Plan or Fund established pursuant to any such collective bargaining agreement." Appellants contend that since part of the merger vote included acceptance of the national constitution, then it should settle the question. However, we agree with the trial court that article 8 of the national constitution "does not control because ... the separate Divi-

sions are neither recognized nor accounted for by the NMEBA in its Constitution." Consequently, this provision in the constitution is inapplicable and not inconsistent with our holding.

### V

In conclusion, the judgment of the district court concluding that the Licensed Division has authority to appoint trustees, is affirmed.

AFFIRMED.