MASON CONTRACTORS ASSOCIATION OF AMERICA, et al., Plaintiffs,

v.

INTERNATIONAL COUNCIL OF EMPLOYERS OF BRICKLAYERS & ALLIED CRAFTSMEN, et al., Defendants.

Civ. A. No. 93–2272 (JHG).

United States District Court, District of Columbia.

May 26, 1994.

Stephen William Robinson, Clifford Reichel Oviatt, Jr., McGuire, Woods, Battle & Boothe, Washington, DC, Sheldon Davidson, Pedersen & Houpt, Chicago, IL, for plaintiffs.

Betty Southard Murphy, Leonard Charles Greenebaum, Baker & Hostetler, Washington, DC, R. Byron Wallace, Baker & Hostetler, Cleveland, OH, for Intern. Council of Employers of Bricklayers and Allied Craftsmen, Bricklayers & Trowel Trades Intern. Pension Fund, Eugene George, Walter Kardy.

Betty Southard Murphy, Leonard Charles Greenebaum, Baker & Hostetler, Washington, DC, Seymour Waldman, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, R. Byron Wallace, Baker & Hostetler, Cleveland, OH, for Intern. Union of Bricklayers & Allied Craftsmen, John T. Joyce, Brian Strickland, Thomas Uzzalino, Louis Weir, John Flynn, L. Gerald Carlisle.

*MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

This case involves a dispute over who is properly a trustee of the Bricklayers and Trowel Trades International Pension Fund ("the Pension Fund"). The Pension Fund is a multiemployer pension fund, jointly administered by trustees, an equal number of whom are appointed by labor and an equal number of whom are appointed by management as is required by the Labor Management Relations Act, 1947 ("the LMRA"), codified at 29 U.S.C. §§ 141 *et seq.* Plaintiffs allege that actions taken by some of the defendants to replace the Mason Contractors Association of America ("MCAA") with the International Council of Employers of Bricklayers and Allied Craftsmen ("ICEBAC") as the body responsible for nominating U.S. Employer Trustees to the Pension Fund constitutes a "structural defect" in violation of the LMRA. In addition, plaintiffs contend that these actions, allegedly violative of the LMRA's requirement of "equal representation," constitute breaches of fiduciary duties owed under both the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. §§ 1001 *et seq.*, and under the common-law.

MCAA, an international trade association, Joseph F. Szabo ("Szabo"), Robert C. Tubesing ("Tubesing"), and George Miller ("Miller"), three trustees of the Pension Fund, initiated this case.[1] The defendants are: ICEBAC, the International Union of Bricklayers and Allied Craftsmen ("the Union"), the Pension Fund, John T. Joyce ("Joyce"), L. Gerard Carlisle ("Carlisle"), Brian Strickland ("Strickland"), Thomas Uzzalino ("Uzzalino"), and Louis Weir ("Weir"), all trustees of the Pension Fund, and Eugene George ("George"), Walter Kardy ("Kardy"), and John Flynn ("Flynn"), three disputed trustees of the Pension Fund. Presently pending are the parties' dispositive cross-briefs.[2]

## BACKGROUND [3]

### A. *The Pension Fund*

The Pension Fund is an employee benefit plan, commonly referred to as a jointly administered multiemployer pension fund. The Pension Fund is administered pursuant to an Agreement and Declaration of Trust ("the Trust Agreement"). The Trust Agreement, *inter alia*, controls the number of trustees that can be appointed,[4] describes the composition of the Board of Trustees, specifies how

---

1. At the time the case was filed approximately six months ago, plaintiffs requested a temporary restraining order ("TRO") prohibiting the Trustees of the Pension Fund from holding a scheduled meeting in Puerto Rico. That TRO application was telephonically withdrawn after the defendants agreed that the meeting at issue would not be held at that time. Initially, the parties agreed that because discovery was unnecessary, a final hearing could be held in February. However, after plaintiffs submitted an unopposed motion for discovery, the Court granted limited discovery and also granted plaintiffs' motion to file an amended complaint. After the close of discovery, the parties filed briefs with supporting affidavits supplementing earlier filed motions and a final hearing was held on May 9, 1994.

2. Also pending is plaintiffs' motion to strike portions of the declarations of John T. Joyce and L. Gerard Carlisle. Plaintiffs contend that portions of the declarations are not based on personal knowledge, are speculative, argumentative and irrelevant. Defendants have opposed that motion and have responded by submitting a Supplemental Declaration of George Miller that avers personal knowledge on the part of Mr. Miller for many of the disputed facts contained in the Joyce

and Carlisle declarations. Plaintiffs' motion is denied. Defective parts of the affidavits have been ignored and only the parts based on personal knowledge have been considered. *See Chambless v. Master, Mates & Pilots Pension Plan*, 571 F.Supp. 1430, 1459 (S.D.N.Y.1983).

3. Except for the very few areas described in this section, the facts are essentially uncontroverted.

4. Article III, § 3.1(a) provides:

The U.S. Fund shall be administered by U.S. Trustees, at least three (3) but not more than eight (8) of whom shall be appointed by the International Union and shall act as "U.S. Employee Trustees," and at least three (3) but not more than eight (8) of whom shall be appointed by the Employers and shall act as "U.S. Employer Trustees." The respective Trustees shall serve at the will of the Union or the Employers respectively, appointing them....

An "employer" is defined in Article I, § 1.1. as any employer bound by a collective bargaining agreement with the Union that provides contributions to the Pension Fund.

trustees are appointed[5] and removed,[6] and describes the procedure that can be used to amend the Trust Agreement.

At the present time, the Pension Fund is administered by a Board of Trustees, comprised of six U.S. Employee Trustees, appointed by the Union; six U.S. Employer Trustees, four of whom used to be appointed by MCAA,[7] and one appointed by TCAA; three Canadian Employee Trustees appointed by the Union; and three Canadian Employer Trustees appointed by the U.S. Employer Trustees. From the 1970's until the present dispute, with the exception of the one TCAA-appointed U.S. Management Trustee, MCAA[8] has appointed all of the U.S. Employer Trustees to the Board of Trustees. At this time, ICEBAC has the authority (with the exception of the one TCAA-appointed U.S. Employer Trustee) to appoint U.S. Employer Trustees.

Plaintiffs Szabo, Tubesing and Miller are all U.S. Employer Trustees of the Pension Fund, appointed to their positions by MCAA. Szabo is Chairman of the Board of Trustees of the Pension Fund.

### B. *MCAA*

Plaintiff MCAA is an international trade association that, *inter alia,* acts as a negotiating representative and collective bargaining agent for its members with the defendant Union and other labor organizations. In 1986, MCAA amended its Constitution and By-laws to allow non-union contractors to become members. In 1987, a second amendment created two classes of membership. The first are called "regular members"—corporations or individuals engaged in business as mason contractors who are signatories to collective bargaining agreements. The second, "independent members," are corporations or individuals not signatories to any collective bargaining agreements.[9] The non-union, independent members, are entitled to full participation in the election of MCAA executive board members and officers.

It is undisputed that MCAA's decision to give non-union contractors membership in the MCAA created considerable concern on the part of the Union.[10] The Union was troubled about the potential impact of MCAA's non-union membership on its appointment of trustees to the Pension Fund and the financial stability of the Pension Fund. According to the Union, the change in the MCAA Constitution and By–Laws focused that concern because the Union believes that: (1) non-union contractors exploit their workers and destroy wage and working standards; (2) non-union contractors are strengthened by being permitted membership in groups like the MCAA; (3) the increase in the market share of non-union contractors poses a threat to the Pension Fund and its beneficiaries; and, (4) decisions made by U.S. Employer Trustees may be influ-

---

**5.** Article III, § 3.3 provides that:

> If any Employer Trustee shall die, become incapable of acting hereunder, or become an inactive employee, resign, or be removed, a Successor Employer Trustee shall be designated in the manner set forth in Article III.

**6.** Any employee Trustee may be removed at any time by the Executive Board of [the Union] and any U.S. Employer Trustee may be removed at any time by the association initially appointing said Trustee....
Article III, § 3.2. An Association can be the MCAA, the Tile Contractors Association of America, Inc. ("TCAA") "and such other Employer organizations as may in conformity with the provisions of this Trust become an 'employer'." Article I, § 1.9.

**7.** At the time MCAA was still the appointing body for the U.S. Employer Trustees, there were only five such trustees, four of whom were appointed

by MCAA and one of whom was appointed by TCAA. At the time MCAA was removed and ICEBAC inserted, the Board of Trustees increased the number of U.S. Employer and Employee Trustees by one each.

**8.** According to defendants, MCAA has never represented a majority of the signatory employers; it was the only masonry contractors association in existence at the time the Pension Fund was originally established. Approximately 21% of the contributions contained in the Pension Fund come from MCAA-members. Not all of MCAA's members contribute to the Pension Fund.

**9.** By allowing both union and non-union members, the MCAA has become a "double breasted" institution.

**10.** These concerns were contemporaneously communicated by Joyce, the President of the Union, to MCAA.

enced by their commitment to the Union because Trustees decide, *inter alia*, withdrawal liability formulas which make it either more difficult or easier for a contractor to become non-union and withdraw as a contributing employer.[11]

In early 1993, plaintiff Miller, then the Executive Director of MCAA, resigned from that position. MCAA then named Michael Adelizzi ("Adelizzi"), the former director of a organization consisting mostly of non-union contractors, as Miller's successor. Because U.S. Employer Trustees are appointed by MCAA officials, not by the membership at large, this move generated further uneasiness to both the Union and the Pension Fund's U.S. Employee Trustees.[12]

### C.  *The Union*

The Union is a labor union representing bricklayers, masons, plasterers, and other workers in the trowel trades. It negotiates labor agreements with employers, requiring the employer to make regular contributions to the Pension Fund for each employee. Joyce is the President of the Union, Carlisle its Secretary–Treasurer, and Strickland, Uzzalino, and Weir are officers of the Union. Each of these individuals is a U.S. Employee Trustee of the Pension Fund, appointed by the Union.

### D.  *IMI* [13]

The International Masonry Institute ("IMI") is an organization established in 1970 by MCAA and the Union for the purpose of promoting the masonry industry. In 1981, IMI became a jointly administered labor/management trust with an equal number of management and labor trustees. Until early 1987, all of the management trustees of IMI were appointed by MCAA, except for one appointed by TCAA. Following the change at MCAA allowing non-union membership, the IMI trustees amended the IMI trust agreement to eliminate MCAA as a trustee-appointing body.[14] After ICEBAC was formed, the trust agreement was amended a second time to name ICEBAC as the employer trustee nominating body (in addition to TCAA, who continues to name one trustee). After these changes, all but two of the MCAA-appointed management trustees resigned from IMI.

IMI's current management trustees include all of the officers of ICEBAC: George, Charles Velardo, DeLazzero and Paul Songer. The labor trustees include Joyce, Carlisle, Strickland, Uzzalino, Weir, and Flynn, all of whom are also U.S. Employee Trustees of the Pension Fund.

### E.  *ICEBAC*

In early 1987, after MCAA was removed as the appointing body for management trustees of IMI, ICEBAC was formed. ICEBAC, a trade association for Union contractors in the masonry industry, was organized to provide management trustees for jointly administered trust funds in the masonry industry, including IMI.[15] The Union readily

---

**11.** Plaintiffs contend that there was a decline in masonry work between 1972 and 1986 caused by many factors, only one of which is the increasing opportunity for employers to walk away from collective bargaining relationships.

**12.** Although the non-union executive board members of MCAA do not vote in the appointment of U.S. Employer Trustees to the Pension Fund, the Union is nonetheless apprehensive about the influence of the non-union board members' views.

**13.** IMI is not a party to this case.

**14.** An IMI board meeting was scheduled for May 6, 1986. Sometime before that date, Joyce spoke to Carlisle regarding the proposal that MCAA be eliminated as the appointing body for management trustees. Joyce requested that Carlisle speak to Giacomo DeLazzero ("DeLazzero"), a management trustee appointed by TCAA, regard-

ing the proposal. Carlisle agreed and he and DeLazzero met on the morning of the board meeting, after which, DeLazzero agreed to support the proposal. It appears that no management trustees except for DeLazzero were aware of the proposal to replace MCAA and that proposal was not discussed by IMI's Administrative Committee. At the board meeting, Joyce moved to amend the IMI trust agreement to remove MCAA on the ground that MCAA permitted non-union members. All of the Union-appointed trustees and DeLazzero voted for the proposal.

**15.** ICEBAC claims that while appointment of U.S. Employer Trustees to the IMI Board of Directors was a primary motivation for its foundation, it was not the sole purpose. For example, ICEBAC has helped develop a new national collective bargaining agreement available to traveling contractors. In addition, ICEBAC's Execu-

concedes that ICEBAC was established as a response to MCAA's decision to allow non-union contractors membership in MCAA since ICEBAC's founders anticipated that MCAA could not represent and advance the interests of union and non-union contractors at the same time.

Membership in ICEBAC is restricted to masonry contractors who have entered into collective bargaining agreements requiring the contractor to contribute to IMI a specified amount of money for each hour worked by any of the contractor's employees covered by the collective bargaining agreement.[16] Membership is automatic for eligible employers and there is no application process. To date, ICEBAC has never held a membership meeting. Board of Director meetings are held, but the director participants are not elected by the membership. They are elected by other directors.[17] George has no recollection of how ICEBAC's first directors[18] were chosen. The By–Laws of ICEBAC specifically preclude members from voting on the election of officers and directors. In turn, the Directors of ICEBAC appoint management trustees to IMI. When ICEBAC's directors meet, they meet at the same locations at which the IMI Board meetings are held. Joyce and Carlisle, both union officials and IMI Union-appointed trustees, have attended ICEBAC's board meetings "for the limited purpose required to enable them to give the union's perspective on specific sub-

jects of mutual interest." Joyce and Carlisle maintain that they attend only for the period of time necessary to make their presentations.

In addition, ICEBAC members pay no dues to support ICEBAC. All of ICEBAC's funding and the legal fees necessary to form ICEBAC originated with IMI.[19] The initial decision to finance the legal fees necessary to establish ICEBAC was made by IMI at the time in 1987 when all but two MCAA-appointed trustees (defendant George and plaintiff Miller) had resigned.[20] Since the formation of ICEBAC, ICEBAC's expenses are included as an item in IMI's yearly budget.[21]

In June 1987, George became the first President of ICEBAC. George had previously been a "regular member" of MCAA. At the time George became President of ICEBAC, he was a U.S. Employer Trustee of the Pension Fund, appointed by MCAA. George also became a management trustee of IMI and co-chairman with Joyce of IMI's joint board of trustees. He continues to hold these IMI positions to date.

## F. *The Dispute*

On March 29, 1993, written notice was sent to the Board of Trustees of the Pension Fund scheduling a meeting in Washington, D.C. on May 26, 1993. A meeting of the Administra-

tive Director has assisted in the establishment of a government-sponsored program to aid East European building contractors.

16. Not all contractors with collective bargaining agreements necessarily contribute to IMI.

17. These directors are all union contractors. There appear to have been only two mailings to ICEBAC's membership. In 1989 and 1990, members of ICEBAC received ballots enabling them to note their choices for directors. Approximately 500 responses were received in each year.

18. MCAA officers and directors were among the founders and initial directors of ICEBAC. The 1987 President of MCAA stated that these MCAA members served on ICEBAC's Board of Directors "with the President of MCAA's blessing."

19. At least some of the MCAA officials named as plaintiffs in this action have been aware that ICEBAC's expenses have been paid by IMI. That

fact is reported in IMI's budget and financial statements. According to George and Joyce, IMI pays ICEBAC's operating expenses because ICEBAC provides valuable management expertise to IMI—services IMI no longer feels comfortable obtaining from MCAA.

20. Although Miller had not resigned, he did not attend that meeting.

21. ICEBAC's office is located on a floor occupied by IMI in a building owned by the Union. In fact, ICEBAC shares the same room with the Director of Technical Services of IMI. The Pension Fund also has offices in the same building. Kardy, the part-time Executive Director of ICEBAC and its only employee, uses IMI's photocopy and facsimile machines. Although ICEBAC has its own telephone number, that number is connected to the IMI telephone system.

tive Committee[22] of the Pension Fund took place on May 24th and May 25th. According to plaintiffs, it was the practice of the Board of Trustees not to consider at a Board of Trustees meeting, any major business items that had not previously been discussed by the Administrative Committee and placed on the agenda for that meeting. Nonetheless, there is no requirement in the Trust Agreement that all proposals be discussed by the Administrative Committee prior to a board meeting.

On May 25th, prior to the Board of Trustees Meeting, Joyce and Miller met in the lobby of a Washington, D.C. hotel. In that meeting, according to Miller, Joyce advised that because the Trust Agreement allowed up to eight U.S. Employee Trustees and eight U.S. Employer Trustees, the Union would propose that Flynn be added as an additional U.S. Employee Trustee and requested that Miller have MCAA consider appointing Kardy as an additional U.S. Employer Trustee. Miller advised that he could not speak for the other U.S. Employer Trustees with respect to naming Kardy. Joyce contends that he asked Miller if ICEBAC could appoint the additional U.S. Management Trustee and Miller stated that he did not believe that MCAA would agree to that.[23] While Miller insists Joyce did not mention ICEBAC to him, nonetheless, he states that had Joyce proposed that ICEBAC be permitted to nominate the sixth management trustee, he would not have agreed.

The Board of Trustees meeting began the morning of May 26th. After all the items listed on the agenda had been discussed, Joyce made an oral motion to delete any reference to MCAA in the Trust Agreement and to name ICEBAC in MCAA's place.[24] There had been no discussion of this proposal at the Administrative Committee meeting the day before and the U.S. Employer Trustees had not been advised of the proposal.[25] It was Joyce's opinion that prior notice of the amendments was unnecessary. The motion to amend the Trust Agreement to insert ICEBAC as the U.S. Management Trustee-appointing body instead of MCAA was not revealed at the beginning of the meeting when "New Business" was announced.

The motion to remove MCAA passed by a vote of six to three with the TCAA-appointed U.S. Employer Trustee abstaining. Plaintiffs Szabo, Tubesing and Miller, all MCAA-appointed U.S. Employer Trustees, voted against the change. Defendants Joyce, Carlisle, Strickland, Uzzalino, and Weir, all U.S. Employee Trustees appointed by the Union, voted in favor of the measure. Defendant George, a MCAA-appointed U.S. Employer Trustee, then the President of ICEBAC, voted for the motion.

In addition, the Trustees voted to expand the number of U.S. Employer Trustees and U.S. Employee Trustees from five each to six each. After the vote, Joyce proposed that the Union appoint Flynn as the sixth U.S. Employee Trustee and that motion was approved. The meeting was adjourned without

22. The Administrative Committee's role is to review matters which will be presented to the Pension Fund at its quarterly meetings and make recommendations regarding those matters.

23. According to ICEBAC, the reason Joyce proposed increasing the number of each type of U.S. Trustee to six was because ICEBAC wished to add Flynn to the Pension Fund's Board of Trustees. All Union board members, except for Flynn, were already U.S. Employee Pension Fund Trustees. The addition of Flynn to that number would require the addition of a new U.S. Employer Trustee and Joyce wished ICEBAC to have the authority to appoint that additional trustee.

24. Although his original intention was to propose that ICEBAC be able to appoint the one additional U.S. Management Trustee, once he realized that he had sufficient votes to substitute ICEBAC

for MCAA, Joyce decided that he had sufficient votes to completely eradicate MCAA's appointing authority. Joyce maintains that had there been agreement to add one ICEBAC-appointed Trustee, he would not have proposed eliminating MCAA.

25. Sometime after May 6, 1986, Joyce had spoken to counsel for the Union regarding amending the Pension Fund Trust Agreement to replace MCAA with ICEBAC. Joyce also discussed amending the Pension Fund Trust Agreement to replace MCAA with other U.S. Employee Trustees of the Pension Fund, including Carlisle, Uzzalino and Weir. According to Joyce, the first time he advised a U.S. Employer Trustee of his intentions was the day before the May 26, 1993 board meeting. However, as stated earlier, MCAA was well aware of the Union's concerns regarding MCAA's membership policy.

any discussion regarding the addition of a sixth U.S. Employer Trustee. However, in the 1992 Annual Report of the Pension Fund issued on July 31, 1993, Kardy was identified as the sixth U.S. Employer Trustee.

When asked why he proposed substituting ICEBAC for MCAA, Joyce replied that he no longer had confidence in MCAA because it had begun to admit members who were not parties to collective bargaining agreements with the Union. However, because seven years had elapsed since MCAA first starting allowing non-union contractors to become members, plaintiffs contend that Joyce decided to replace MCAA with ICEBAC due to two 1993 incidents. In the first, Joyce formed the false belief that the son of MCAA's then-president, Richard C. Matthews, was a non-union contractor; Joyce alluded to this belief at the May 26th board meeting. It is a fact that Matthews' son does belong to a union and works for his father, a union contractor. The second reason cited by plaintiffs is the fact that Adelizzi, formerly president of an association of primarily non-union contractors, was appointed MCAA's Executive Director.

On September 20, 1993, by a vote of its Executive Board, MCAA attempted to remove George as a U.S. Employer Trustee, appointing Richard Felice ("Felice"), as a successor Trustee.[26] Because of the disputed amendment installing ICEBAC in MCAA's stead, George contends that the removal by MCAA is ineffective because only ICEBAC has the authority to appoint or remove U.S. Employer Trustees. On October 19, the Executive Board of the MCAA appointed Matthews as the sixth U.S. Employer Trustee.

Written notice had earlier been sent to the Pension Fund's Board of Trustees scheduling a Board of Trustees meeting in Puerto Rico for November 1. That meeting was later rescheduled. On October 21, Joyce, as Secretary of the Pension Fund Board of Trustees, advised Matthews and Felice by letter that they would not be seated at the upcoming Board Meeting because they had been

appointed by MCAA, a body without the authority to appoint them to their positions.

### DISCUSSION

As a general matter, under the LMRA, employers are prohibited from making any payments to employee representatives. *See* 29 U.S.C. § 186(a). Section 302 of the LMRA was enacted to prevent "the possible abuse by union officials of the power which they might achieve if welfare funds were left to their sole control." *Arroyo v. United States,* 359 U.S. 419, 425–26, 79 S.Ct. 864, 868–69, 3 L.Ed.2d 915 (1959). However, § 302 provides an exception for employer contributions made to trusts meeting certain specified requirements. 29 U.S.C. § 186(c)(5). Among the requirements of § 302(c)(5), is the condition that the "employees and employers are equally represented in the administration of such fund . . . ." *Id.* It is this equal representation requirement that is at issue here.

■ Before addressing whether § 302(c)(5) has been violated, it is first necessary to ascertain whether, pursuant to § 302(e), this Court has jurisdiction to review the alleged violation. In light of the Supreme Court's most recent discussion of the scope of § 302(e), it is clear this Court does not have jurisdiction.

In *Local 144 Nursing Home Pension Fund v. Demisay,* —— U.S. ——, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993), the Supreme Court sharply curtailed an expanded interpretation of § 302's jurisdictional provision. Section 302(e) provides that the district courts have jurisdiction to "restrain violations of this section . . . ." 29 U.S.C. § 186(e). Addressing the use of § 302(e) to enforce the strictures of § 302(c)(5), the Supreme Court held

> that § 302(e) does not provide authority for a federal court to issue injunctions against a trust fund or its trustees requiring the trust funds to be administered in the manner described in § 302(c)(5).

---

**26.** The Executive Board of the MCAA is comprised of 59 members; 6 are non-union employers. None of these 6 employers took part in the vote to remove George and appoint Felice. Similarly, none of these independent MCAA members took part in the vote to appoint Matthews.

*Demisay,* 113 S.Ct. at 2257. Specifically discussing alleged § 302(c)(5) violations, the Court stated:

> By its unmistakable language, § 302(e) provides district courts with jurisdiction "to restrain violations of this section." A "violation" of § 302 occurs when the substantive restrictions in §§ 302(a) and (b) are disobeyed, which happens, not when funds are administered by the trust fund, but when they are "pa[id], len[t], or deliver[ed]" to the trust fund, § 302(a), or when they are "receive[d], or accept[ed]" by the trust fund, or "request[ed], [or] demand[ed]" for the trust fund, § 302(b)(1). And the exception to violation set forth in paragraph (c)(5) relates, not to the purpose for which the trust fund is in fact used ... but rather to the purpose for which the trust fund is "established," § 302(c)(5), and for which the payments are "held in trust," § 302(c)(5)(A). The trustees' failure to *comply* with these latter purposes may be a breach of their contractual or fiduciary obligations and may subject them to suit for such breach; but it is no violation of § 302.

*Id.,* 113 S.Ct. at 2257 (footnotes omitted).

■ To evade the reach of *Demisay,* plaintiffs contend that § 302(e) is properly invoked because the trust fund at issue is a nonqualifying trust fund due to the structural defect of unequal representation. In other words, payments made by employers and received by the Pension Fund violate §§ 302(a) and (b) because the fund no longer satisfies § 302(c). That argument fails. Rephrasing the issue in this regard in order to come within *Demisay* is merely an exercise in semantics. Although the same argument could have been made in *Demisay,* the Supreme Court rejected jurisdiction over the matter. For example, in *Demisay,* plaintiffs argued that their fund suffered from a structural defect because two of § 302(c)(5)'s provisions had allegedly not been satisfied,

thereby creating a structural defect. Thus, any future payments to that fund would be considered payments made to a nonqualifying fund. Section 302(e) did not extend to the plaintiffs in *Demisay* and it cannot be used here to provide the jurisdiction plaintiffs invoke. An alleged violation of the provision at issue here, that employers and employees be equally represented in the "*administration*" of the fund, occurs "when funds are administered by the trust fund," an occurrence not redressable under § 302(e). *See id.,* 113 S.Ct. at 2257.[27] In conclusion,

> [t]he text of § 302 requires that, if payments are to be exempt from its prohibition, they must be [made to a plan administered by an equal number of employer and employee representatives]. There is nothing to suggest that this had the ambitious purpose of establishing an entire body of federal trust law, rather than merely describing the character of the trust to which payments are allowed, leaving it to state law to determine when breaches of that trust have occurred and how they may be remedied.

*See id.,* 113 S.Ct. at 2258. The facts and argument made in this case are indistinguishable from *Demisay* and therefore fail.

Even if jurisdiction existed, the relief requested by plaintiffs would not be granted for the reasons recited by plaintiffs. Relying almost entirely on a 1977 Third Circuit case, plaintiffs contend that the 1993 amendment to the Pension Fund's Trust Agreement that replaced MCAA with ICEBAC constitutes a "structural defect" in violation of the LMRA's "equal representation" requirement. The Third Circuit case, *Associated Contractors of Essex County, Inc. v. Laborers Int'l Union of North Am.,* 559 F.2d 222 (3d Cir. 1977), involved a factual scenario somewhat similar to the instant case. In *Associated Contractors,* the trust agreement of a § 302 pension fund was amended to grant appointing authority for half of the management-

---

**27.** Moreover, in *Demisay,* the Supreme Court reversed the lower courts' finding of jurisdiction, noting that the district and circuit courts relied on a Second Circuit case (which in turn quoted *Associated Contractors* ) holding that federal courts have

jurisdiction under [section 302(e) ] to enforce a trust fund's compliance with the statutory standards set forth in subsection (c)(5) in eliminating those offensive features in the structure or operation of the trust that would cause it to fail to qualify for a (c)(5) exception.

*See id.,* 113 S.Ct. at 2256 (citations omitted).

appointed trustees to a rival trade association of the body originally vested with that appointment authority. *Id.* at 224. Holding that this amendment constituted a violation of the LMRA's "equal representation" requirement, the Third Circuit noted that:

> [T]he trustees of [a jointly administered trust fund] function as fiduciaries for the funds' beneficiaries but they also serve as representatives of the parties who appoint them. Insofar as it is consistent with their fiduciary obligations, employer trustees are expected to advance the employer while employee trustees are expected to further the concerns of the union in the ongoing collective bargaining process between them.

*Id.* at 228. That court then held that the amendment to the trust agreement to permit two different management organizations to have appointing authority

> would impair the delicate balance between employer and employee trustees and thereby destroy the effectiveness of this safeguard.... While the union trustees could be expected to address fund problems with a strong common voice, representatives of two rival employers' associations could be expected to speak in discordant or diluted voices.

*Id.* As a consequence, the Third Circuit announced a *per se* rule, concluding that § 302(c)(5) is violated whenever employer trustees representing a rival association not a party to the original trust agreement are added to the board of trustees without the consent of the original employer association. *Id.*

■ Assuming *arguendo* that *Associated Contractors* remains valid today, *Associated Contractors* would not be applied to this case. First, the two cases are factually distinct. *Associated Contractors* was concerned with the lack of a common voice on the part of management. Here, ICEBAC (*assuming* it is a valid management organization) is the sole appointing authority (except for TCAA, an entity uninvolved in this suit) and can speak with one voice in response to union-appointed trustees. Second and more important, as a legal matter, although § 302(c)(5) requires a court to look beyond pure numeri-

cal equality of representatives to see if there is "meaning full adherence" to the congressional command of equality, *see National Stabilization Agreement of the Sheet Metal Indus. Trust Fund v. Commercial Roofing and Sheet Metal,* 655 F.2d 1218, 1224 (D.C.Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982), this Court does not agree with the *per se* rule announced in *Associated Contractors.*

■ Accordingly, even though *Associated Contractor*'s rule would not be applied, there would still be inquiry into whether equal representation exists. *NLRB v. Amax Coal Co.,* 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), does not require otherwise. Again assuming *arguendo* that violations of § 302(c)(5), can be enforced by this Court, defendants' argument regarding *Amax Coal,* taken to its logical conclusion would effectively eviscerate § 302(c)(5) and render the "equal representation" requirement contained therein unenforceable. Undoubtedly, trustees of a § 302(c)(5) pension fund owe their entire allegiance to the beneficiaries of that trust. According to trust law, trustees cannot serve two masters equally well. *See id.* at 330, 101 S.Ct. at 2794. *Amax Coal* found that, in addition to the fact that Congress intended basic principles of trust law to apply to the LMRA, the passage of ERISA reaffirmed Congress' intentions regarding a trustee of a pension fund by essentially codifying the strict fiduciary duties that a trustee must meet. *See id.* at 332, 101 S.Ct. at 2795.

■ But trustees' obligations of sole loyalty to the beneficiaries does not mean that the equal representation requirement of the LMRA is unenforceable. The LMRA still requires equal representation and *Amax Coal* did not vitiate that requirement. Indeed, the passage of ERISA reinforces this finding. Section 414(d) of ERISA expressly states that:

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under such law.

29 U.S.C. § 1144(d). "[T]his is a strong comprehensive express statement that ERISA is not to be read as displacing by implication any pre-existing federal legislation." *National Stabilization,* 655 F.2d at 1223 (quoting *Air Line Pilots Assoc., Int'l v. Northwest Airlines, Inc.,* 627 F.2d 272, 276 (D.C.Cir. 1980)). Congress did not intend ERISA to supplant the LMRA; ERISA was enacted to fill gaps in worker protection. *Id.* Thus, although *Amax Coal* defines the fiduciary duties owed by a trustee of a § 302(c)(5) pension fund to the beneficiaries and overrules that portion of *Associated Contractors* holding that trustees owe dual loyalties, it does not eviscerate from § 302(c)(5) Congress' requirement that there be equal representation between employer and employee trustees.

In sum, while § 302(c)(5)'s "equal representation" requirement has not been rendered meaningless, it is unclear whether plaintiffs could demonstrate a violation of § 302(c)(5) on the facts presented in this case. There is no evidence to support a finding that the union exercises actual dominion and control over any U.S. Management Trustee of the Pension Fund. As plaintiffs readily conceded at oral argument, there has

been no actual harm to the beneficiaries of the Pension Fund. Nevertheless, plaintiffs' concern is understandable. Because of the interrelationships detailed *supra* in the "Background" section, there does exist the potential that Union control over management trustees could be exercised at some point in the future. In light of the holding that § 302(e) of the LMRA does not confer jurisdiction to resolve this matter, whether solely the potential for Union dominion and control that exists in this case is sufficient to constitute a violation of equal representation need not be reached at this time.[28]

■■■■ The rest of plaintiffs' claims, alleged breaches of fiduciary duties under ERISA[29] and the common-law[30], are all premised on the conclusion that the LMRA has been violated.[31] Without that foundation to support those claims, they must be dismissed. Plaintiffs cite no authority or facts to support a contrary conclusion.

### CONCLUSION

For the reasons stated above, it is hereby

ORDERED that plaintiffs' motion to strike is denied; it is

---

**28.** The cases cited by plaintiffs to support their argument were decided approximately twenty years ago, long before *Amax Coal* and *Demisay* and are of questionable validity. *See, e.g., Quad City Builders Ass'n v. Tri City Bricklayers Union No. 7,* 431 F.2d 999 (8th Cir.1970); *Mobile Mechanical Contractors Ass'n v. Carlough,* 456 F.Supp. 310 (S.D.Ala.1978), *aff'd in part, rev'd in part on other grounds,* 664 F.2d 481 (5th Cir. 1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 850 (1982).

**29.** Section 404(a)(1) of ERISA states, in relevant part:

A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
   (A) for the exclusive purpose of
   (i) providing benefits to participants and their beneficiaries; and ...
   (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; ...
   (C) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with

the provisions of this subchapter or subchapter III of this Chapter.
29 U.S.C. § 1104.

**30.** Plaintiffs have not asserted any particular state law, just federal common-law. Clearly, state common-law has been expressly preempted and therefore cannot be invoked by plaintiffs. *See* 29 U.S.C. 1144; *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 48, 107 S.Ct. 1549, 1551, 1553, 95 L.Ed.2d 39 (1987). Similarly, federal common-law principles are preempted by ERISA's comprehensive statutory scheme. This case does not require that the Court fill in "gaps" in ERISA.

**31.** MCAA does have jurisdiction to bring this case under ERISA. A fiduciary, a person or entity with discretionary authority or responsibility in the administration of the plan, is entitled to bring suit. *See id.* §§ 1002(21)(A), 1132(a)(3) (a civil action may be brought by a participant, beneficiary or fiduciary). Because this case was brought by MCAA, under its alleged continued authority to exercise the discretionary authority of a fiduciary, MCAA has standing. *See Licensed Division District No. 1 MEBA/NMU v. Defries,* 943 F.2d 474, 478 (4th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).

FURTHER ORDERED that judgment is entered in favor of the defendants and against plaintiffs. This case stands dismissed.

IT IS SO ORDERED.